IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER R. HALL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-3301 |
| | : | |
| SHAWN NISBET, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                                                  **AUGUST 23, 2024**

      Plaintiff Christopher R. Hall, a prisoner currently incarcerated at SCI Waymart, brings this *pro se* action alleging violations of his civil rights by officers of the Abington Township Police Department during a search in December 2017 that led to his subsequent arrest. Hall seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Hall leave to proceed *in forma pauperis* and dismiss his Complaint because it reasserts claims that were previously dismissed as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

**I.     FACTUAL ALLEGATIONS AND LITIGATION HISTORY**[1]

      On July 10, 2019, Hall initiated a civil matter in the Court of Common Pleas of Montgomery County that was later removed to this District in September 2019. *See Hall v. Nisbit*, Civil Action No. 19-4382 ("*Hall I*"). Hall named as defendants Detective Shawn Nisbit; Detective Richard Beaghely; Officer Ryan Hasara; Sergeant Oswaldo Toledo; Officer John Landes; Officer Raymond Townsend; Officer William Plymouth; Sergeant Shawn Williams;

---

[1] The factual allegations set forth in this Memorandum are taken from Hall's Complaint (ECF No. 2) and publicly available dockets. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

Officer Jeffrey Anderson; Sergeant Richard Kondan; Sergeant Shane Larosa; Officer Robert Hill, Jr.; Officer Ryan Brown; Officer Ammaturo; Officer Farley; Officer Nyman; Abington Township Police Department; and Municipal Township Building.  (*Hall I*, ECF No. 1.)

After the parties conducted discovery, they filed cross motions for summary judgment.  In a May 25, 2021 Order, the Honorable Eduardo C. Robreno, *inter alia*, granted the defendants' motion for summary judgment, entered judgment in favor of the defendants, and closed the case.  (*Hall I*, ECF Nos 58, 59.)  The Court found as follows:

> Plaintiff alleges that his December 21, 2017 search and arrest were accomplished as a result of a falsified warrant, and that as a result, his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments have been violated.  Plaintiff requests 1) a declaratory judgment that the policies, practices, and acts complained of are unconstitutional; 2) a preliminary and permanent injunction preventing the Abington Township Police Department from employing the named officers; and 3) various monetary damages.
> Plaintiff's claims are barred by *Heck v. Humphrey*, where the Supreme Court held:
>
>> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.
>
> 512 U.S. 477, 486-87 (1994).  The *Heck* bar "applies to claims involving money damages as well as those seeking equitable and declaratory relief." *Schreane v. Marr*, 722 F. App'x 160, 165 (3d Cir. 2018) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)).
> Here, Plaintiff stands convicted of six counts of illegal possession of a firearm, two counts of narcotics violations, and three counts of receiving stolen property, and is sentenced to the next twelve years in prison.  A judgment in favor of Plaintiff would "necessarily imply the invalidity of his conviction," *see Heck*, 512 U.S. at 487, given Plaintiff's allegations that the search was illegal and an

> invasion of his privacy and that the officers knowingly and deliberately made false statements that created a falsehood in applying for the warrant at issue. *See United States v. Rice*, 825 F. App'x 74, 76-77 (3d Cir. 2020). Thus, since Plaintiff has not proved that his conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *see Heck*, 512 U.S. at 487, his claims are barred by *Heck v. Humphrey* and summary judgment in favor of Defendants is warranted.

(*Hall I*, ECF No. 58 at 1-2.)

Hall appealed the dismissal of his case. (*Hall I*, ECF Nos. 60, 61, 62.) The United States Court of Appeals for the Third Circuit affirmed in part, vacated in part, and remanded the judgment. (*Hall I*, ECF No. 67.)[2] Hall had asserted violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments, a *Monell* claim, as well as pendent state law tort claims. (*Hall I*, ECF No. 67-1 at 3.) The Circuit distinguished Hall's false arrest and illegal search claims that accrued before his conviction, from his other claims. (*Hall I*, ECF No. 67-1 at 4 (citing *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014) (illegal-search claim accrues when plaintiff is aware of harm).) The Court

---

[2] The Third Circuit described the underlying state court prosecution as follows:

> In December 2017, police responded to a report that several people were arguing outside Hall's residence. By the time police arrived, none of those persons were outside. After responding officers allegedly heard a woman screaming and loud movements coming from inside the house, they broke down the door and conducted a "sweep" of the residence. Police had been informed that Hall resided at the home and that he was wanted on an outstanding warrant for aggravated assault. While they did not find him there, police did spot marijuana plants in a bedroom. Appellee Nisbit obtained a warrant to search the house. As a result of the search, police recovered guns (some stolen), ammunition, marijuana plants, and digital scales, among other things. Hall was eventually arrested and found guilty by a jury of six counts of illegal possession of a firearm, two counts of narcotics violations, and three counts of receiving stolen property. He is currently serving a 13-to-28 year prison sentence.

*Hall I*, ECF No. 67 at 4.

explained that this is different from whether *Heck* substantively barred Hall's claims, since an accrued claim may still be barred under *Heck*. (*Id.*) Because it was unclear to the Circuit whether the District Court applied this distinction, the judgment was vacated as to the individual defendants on Hall's Fourth Amendment claims. (*Id.*) The Circuit affirmed the judgment with respect to Hall's constitutional claims on other bases. (*Hall I*, ECF No. 67-1 at 5.) That is, summary judgment was properly granted on Hall's Fifth Amendment claim because the Fifth Amendment applies to federal officials, and none of the defendants were federal officials. (*Id.*) Summary judgment was properly granted on Hall's Fourteenth Amendment Due Process claim because the search and arrest were appropriately considered under the Fourth Amendment, rather than a due process analysis. (*Id.*) Additionally, the Circuit determined that summary judgment was appropriate on Hall's First, Sixth, Eighth, and Ninth Amendment claims because he did not explain the relevance of those provisions or present evidence to support the claims. (*Id.*) Hall's state law claims were remanded. (*Hall I*, ECF No. 67-1 at 6.)

By Order dated April 27, 2022, the case was re-opened in the District Court. (*Hall I*, ECF No. 69.) The parties were ordered to file motions for summary judgment addressing Hall's remaining claims. (*Hall I*, ECF No. 74.) After additional discovery, the court issued a December 20, 2022 Memorandum and Order finding that Hall's Fourth Amendment claims were substantively barred by *Heck*. (*Hall I*, ECF Nos. 90, 91.) The court concluded that Hall failed to demonstrate that a challenge to the facts underlying the search of his residence and the warrant for his arrest would not necessarily imply the invalidity of his conviction. (*Hall I*, ECF Nos. 90 at 13.) Instead, the court found that the facts underlying the search and arrest warrant were "one and the same" and essential to obtaining his state-court conviction. (*Id.*) Accordingly,

defendants' motion for summary judgment was granted because the Fourth Amendment claims were barred by *Heck*. Any remaining state law claims also were dismissed.

Hall filed a Notice of Appeal on March 16. 2023. (*See Hall I*, ECF Nos. 98, 99.) Hall's appeal was not timely; however, he claimed that he did not receive notice of the entry of judgment. (*See Hall I*, ECF No. 108.) By Order dated June 27, 2023, the Third Circuit forwarded to the District Court documents that were filed in the Circuit to be construed as motions to reopen the time for appeal under Federal Rule of Appellate Procedure 4(a)(6). (*Id.*) The Circuit retained jurisdiction but remanded the matter to the District Court to rule on the motions. (*Id.*)[3] The motions were entered on the District Court docket at ECF Nos. 109 and 110, and *Hall I* was reassigned to the undersigned on August 4, 2023. (*See Hall I*, ECF Nos. 109, 110, 112.)

Upon consideration of the motions to reopen, the defendants' response, and Hall's reply, the motions to reopen were denied and the case remained closed. (*Hall I*, ECF No. 117.) Hall then filed a Notice of Appeal, and an additional amended motion to reopen the appeal. (*Hall I*, ECF No. 122.) Hall's amended motion was denied. (*Hall I*, ECF No. 124.) By Order dated February 6, 2024, the Circuit summarily affirmed the District Court's denial of the motions to reopen the time to appeal under Federal Rule of Appellate Procedure 4(a)(6). (*Hall I*, ECF No. 143.) Additionally, on February 7, 2024, Hall's appeal was dismissed for lack of jurisdiction. (*Hall I*, ECF No. 142.)

---

[3] The Circuit's June 27, 2023 Order also indicated that Hall's appeal would be held in abeyance pending the District Court's consideration of, and decision on, the motion to reopen. (*Hall I*, ECF No. 108.) Additionally, Hall was advised that a ruling on the motion for relief under Rule 4(a)(6) could be appealed to the Circuit. (*Id.*)

Hall commenced the present case on July 22, 2024.  (*See* ECF Nos. 1-3.)  He named the following Defendants:  Shawn Nisbet; Robert Hill, Jr.; Chief Molley; Ryan Hasara; Ryan Duntzee; Oswaldo Toledo; Shane Larosa; John Lands; Raymond Townsend; William Plymouth; Shawn Williams; Jeffrey Anderson; Richard Kondon; Ryan Brown; Thomas Nyman; Michael Farley; Andrew Ammaturo; and Abington Police Department and Municipal Building.  (Compl. at 1-7.)

In describing the incident that forms the basis of his claims, Hall quotes in part from the Third Circuit's April 20, 2022 Order that remanded his claims.  (*See id.* at 8.)  As alleged, police responded to a report of several people arguing outside Hall's residence in December 2017.  (*Id.*)  When police arrived, none of those persons were outside.  (*Id.*)  Because the responding officers heard a woman screaming and loud movements coming from the house, they broke down the door and conducted a sweep of the residence.  (*Id.*)  The officers had been informed that Hall resided at the home and that he had an outstanding warrant for aggravated assault.  (*Id.*)  While Hall was not found at the house, marijuana plants were found in a bedroom.  (*Id.*)  Defendant Nisbet obtained a search warrant.  (*Id.*)  As a result of the search, police recovered guns, some of which were stolen, ammunition, marijuana plants, and digital scales, in addition to other items.  (*Id.*)

Hall further alleges that after the search was conducted, his wife, Erica Johnson arrived at the house and recovered her three children.  (*Id.*)  He claims that Johnson spoke with Chief Molley, and at least a part of the conversation was recorded on video.  (*Id.*)

Hall claims that his Fourth, Eighth, and Fourteenth Amendment rights were violated.  (*Id.* at 10-20.)  In particular, Hall asserts that the affidavits of Defendants Hasara, Toledo, and Nisbet that were submitted in connection with the search warrant application contained false statements.

(*Id.* at 10-12.)  He further claims that the false statements of Defendant Nisbet caused his bail to be excessive.  (*Id.* at 17-18.)  Additionally, Hall asserts a municipal liability claim because Defendant Molley allegedly was aware of the false statements.  (*Id.* at 18-19.)  Hall also contends that Defendants cannot rely upon qualified immunity to protect them from liability from damages.  (*See id.* at 13-16.)  Based on his allegations, Hall seeks declaratory and injunctive relief, as well as monetary damages.  (*Id.* at 20.)

## II.     STANDARD OF REVIEW

The Court will grant Hall leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint is frivolous or malicious, or fails to state a claim.  "A court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant."  *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995).  In that regard, "a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims."  *Brodzki v. CBS Sports*, No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

---

[4] However, since Hall is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Hall is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

### III. DISCUSSION

The Court understands Hall to raise constitutional claims under 42 U.S.C. § 1983 pursuant to the Court's federal question jurisdiction. Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional

violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). In other words, "'[e]ach Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677). To state a § 1983 claim against a municipality, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

As set forth more fully below, Hall's Fourth Amendment claims are repetitive of claims presented in *Hall I*, and remain *Heck*-barred. Hall's allegations regarding due process violations, excessive bail, and Chief Molley's actions fail to allege plausible § 1983 claims. The Court will discuss each in turn.

> **A. Fourth Amendment Claims**
>
> > **1. Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)**

Hall's current Fourth Amendment claims are repetitive of his earlier, unsuccessful effort to litigate claims that were barred by the *Heck* doctrine. Hall again asserts that the warrants were invalid because they were predicated on false statements. Specifically, Hall claims that Defendants Hasara and Toldeo "presented a[n] unreasonable determination, predicated solely on the defendants['] false statements" which led to violations of his rights. (Compl. at 10.) According to Hall, Defendants Hasara and Toledo "added false statements from the eyewitness Christopher Marshall." (*Id.* at 11, 24-30.) Hall further asserts that Defendant Nisbet filed "voluminous affidavits containing false statements" in support of the search warrant. (*See id.* at 8-12, 32-35, 37-41.)

Hall has not alleged, much less demonstrated, that circumstances in his underlying state court conviction have changed.  A review of the state court docket system reveals that his conviction has not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  *See Commonwealth v. Hall*, CP-46-CR-0002498-2018 (C.P. Montgomery).  Indeed, a hearing on Hall's pending post-conviction petition is scheduled for October 24, 2024.  (*Id.*)

Despite being advised that his Fourth Amendment claims based on alleged false statements were *Heck*-barred, Hall has returned with a Complaint raising the same claims based on the same events.  "Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious."  *Banks v. County of Allegheny*, 568 F. Supp. 2d. 579, 589-90 (W.D. Pa. 2008); *see also Washington v. Gilmore*, 825 F. App'x 58, 60 n.2 (3d Cir. 2020) (*per curiam*) ("A Court may choose to dismiss a duplicative claim as frivolous or malicious. . . ."); *Kennedy v. Getz*, 757 F. App'x 205, 207-08 (3d Cir. 2018) (*per curiam*) ("Repetitive litigation undoubtedly is some evidence of a litigant's motivation to vex or harass a defendant where it serves no legitimate purpose.") (citing *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993)); *Wright v. Nocito*, No. 23-2068, 2024 WL 1299706, at *2 (W.D. Pa. Mar. 27, 2024) (dismissing case as frivolous because it was repetitive of an earlier action).  Accordingly, Hall's Fourth Amendment claims will be dismissed pursuant to § 1915(e)(2)(B)(i) as malicious.  The claims will be dismissed without prejudice to Hall raising them *only* in the event his conviction is first reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

### 2. Dismissal Pursuant to § 1915(e)(2)(B)(ii)

Hall's Fourth Amendment claims also may be dismissed pursuant to § 1915(e)(2)(B)(ii) because he has failed to allege plausible claims. For the same reasons set forth in *Hall I*, Hall's Fourth Amendment claims based on the constitutionality of the warrants are substantively barred by *Heck*. In the December 20, 2022 Memorandum that addressed Hall's claims upon remand, the Court explained:

> Given that Defendants have established that (1) the protective sweep of Plaintiff's residence was proper; (2) the protective sweep was essential to obtaining probable cause to support the search warrant; (3) the execution of the search warrant revealed evidence supporting probable cause to arrest Plaintiff; (4) Plaintiff was arrested pursuant to a duly executed warrant; and (5) the evidence obtained during the search and arrest were essential to Plaintiff's state-court conviction, any challenge to either Plaintiff's arrest or the search of his residence would necessarily imply the invalidity of his conviction.

(*Hall I*, ECF No. 90 at 2.)

The court reviewed the Pennsylvania Superior Court opinion affirming Hall's conviction and noted the trial court's finding that "exigent circumstances excused the need for a warrant to enter the residence, in light of [Hall's] outstanding warrant for aggravated assault, his connection to the property, the screaming inside the residence, and the details provided by the 911 caller." (*Id.*, ECF No. 90 at 3 (internal quotations and alterations omitted).) The court further noted the Superior Court's finding that the search warrant executed on the basis of the information obtained during the sweep was supported by probable cause. (*Id.*)

The court described Hall's claims as arising from: (1) a search warrant executed at his residence when police officers entered his home after a reported disturbance, and (2) an arrest warrant that was later executed. (*Id.*) The court determined that Hall had not pointed to evidence that would contradict the state courts' findings (1) that the search and search warrant

were valid and the evidence seized during the search was critical for Hall's conviction; and, (2) that the evidence seized during the search was the basis for the arrest warrant. (*Id.* at 8.) Thus, his claims were barred by *Heck*.

The court first addressed, in great detail, the legality of the search of Hall's residence. (*Id.* at 8-9.) The court stated:

> The responding officers observed contraband during the protective sweep of the residence, which provided grounds for a formal search warrant. [*Commonwealth v. Hall*], 2021 WL 4520327, at *1 [E.D. Pa. Oct. 4, 2021]. The protective sweep was found by the state courts to be appropriate given that the 911 call reported a physical domestic altercation; that the address was associated with Plaintiff, for whom there was an outstanding warrant for aggravated assault; and the officers' perception of screaming inside the residence upon their arrival. *Id.* at *5. When executing the search warrant, officers found numerous live marijuana plants; drug paraphernalia; instruments used for weighing, packaging, and distributing contraband; equipment used for growing marijuana, including grow lights, humidifiers, and fertilizer; mail addressed to Plaintiff and his spouse; and, five handguns, four of which were located under the mattress in the master bedroom. *Id.* at *1-2.
> Plaintiff was convicted of six counts of illegal possession of a firearm, two counts of narcotics violations, and three counts of receiving stolen property.
> Impugning the validity of the search warrant would necessarily undermine the firearms convictions. Plaintiff's claim here, as a challenge to "evidence used to secure an indictment at a criminal trial . . . directly challenges – and thus necessarily threatens to impugn – the prosecution itself." *McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019) (citing *Heck*, 512 U.S. at 486-87).
> The firearms were discovered in the master bedroom, where identifying documents and mail addressed to both Plaintiff and his spouse were recovered. *Hall*, 2021 WL 452037, at *2. Four handguns were found under the mattress in the bedroom, and a fifth firearm was recovered from a wardrobe containing men's clothing and paperwork with Plaintiff's name in that same room. *Id.* Although DNA evidence on the firearms was inconclusive, text messages recovered from phones belonging to Plaintiff and his spouse indicated that Plaintiff was aware that guns were in the room. *Id.*
> As Defendants state, "but for the searches of his residence, the weapons, drugs and drug paraphernalia would not have been seized." Defs.' Mot. at 19, ECF No. 70. Thus, the search was a crucial part of obtaining the evidence to support the conviction against Plaintiff in the

> state courts below and challenging the propriety of that search would certainly impugn Plaintiff's conviction.
>
> Although Plaintiff contends that the warrants are unconstitutional because his spouse, Erica Johnson, was incorrectly noted as being inside the residence at the time the police responded to the disturbance call, Plaintiff has not pointed to evidence indicating that this mistake is a compensable harm, distinct from his conviction. Thus, any argument about the constitutionality of the search warrant, given the mistaken description of Ms. Johnson's whereabouts, is substantively barred by *Heck*. Nor has Plaintiff pointed to evidence that would create a genuine dispute of material fact that, "doctrines like independent source and inevitable discovery, and especially harmless error," would have allowed his conviction to stand on other grounds. *See Heck*, 512 U.S. at 487 n.7 (citations omitted).

(*Hall I*, ECF No. 90 at 8-11.)

The court also considered Hall's claims that he was unlawfully arrested because the arrest warrant was falsified. (*Hall I*, ECF No. 90 at 11-13.) The court stated:

> Plaintiff uses the inconsistencies among the different responding officers' reports as "evidence" that the reports were falsified and therefore were an improper basis for the arrest warrant. Plaintiff also avers that probable cause was lacking: Defendant Nisbet "used this situation to search and create a[n] arrest warrant for the plaintiff." Compl. at 7, ECF No. 1 at 15. However, because Plaintiff fails to point to evidence indicating that a finding of unconstitutional arrest would not necessarily imply the invalidity of his conviction, Plaintiff's claim is substantively barred by *Heck*.
>
> Defendants point out that the information underlying the arrest warrant for Plaintiff was obtained during the duly authorized search of his residence. Defs.' Mot. at 19, ECF No. 79. Plaintiff does not argue otherwise. Where, at the time of a plaintiff's arrest, the officers "had access to all the information" regarding the alleged offense, "either second-hand, through [a civilian's] complaint, or first-hand, through observation of [a plaintiff's] behavior," then a plaintiff's claims of false arrest and unlawful conviction are necessarily intertwined. *Burke v. Township of Cheltenham*, 742 F. Supp. 2d 660, 669-70 (E.D. Pa. 2010). Thus, because the arrest warrant was obtained on the basis of the evidence seized and information ascertained pursuant to the search of a residence, a challenge to the arrest warrant would necessarily implicate the search warrant. The presence of the firearms in Plaintiff's bedroom, along with a number of documents addressed to him, at his legal residence, provides probable cause for an officer to believe that Plaintiff possessed or constructively possessed the firearms.

>It is noted throughout the police incident reports that Plaintiff had an outstanding arrest warrant for aggravated assault at the time of the domestic disturbance call and protective sweep. *See* Compl. Ex. A, ECF No. 1 at 28-37. In theory, Plaintiff could have been arrested on the basis of the outstanding warrant instead, thus distinguishing the basis of Plaintiff's arrest from the search itself and allowing the claim for damages to survive under *Heck*. *See Heck*, 512 U.S. at 487 n.7. But Plaintiff does not argue that he was or could have been arrested on the existing warrant instead of the arrest warrant issued following the search of his residence.
>
>The existing arrest warrant arguably contributed to the responding officers' determination that "exigent circumstances" existed to justify a protective sweep of the residence. Plaintiff claims that the protective sweep was pretext to arrest him on his outstanding warrant. *See* Compl. at 10, ECF No. 1 at 17. But if Plaintiff were to successfully argue that the initial protective sweep of his residence was unconstitutional, he necessarily would question the validity of his conviction, as the information obtained during the protective sweep provided probable cause for the search warrant, which in turn provided probable cause for the arrest warrant.

(*Id.*)

In the instant case, Hall raises essentially the same challenges to the search warrant and arrest warrant as he raised in *Hall I*. However, he has not alleged that his convictions were reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, and the public record reflects that the convictions remain intact. Accordingly, his Fourth claims remain barred by *Heck* and will be dismissed.

## B.     Fourteenth Amendment Claim

In the discussion of his Fourth Amendment allegations, Hall also references the Fourteenth Amendment. (*See* Compl. at 11-12.) To the extent that Hall seeks to raise a Fourteenth Amendment Due Process Claim, he has failed to allege a plausible basis for a claim. As explained by the Third Circuit in its review in *Hall I*, claims concerning the search and arrest are appropriately considered under the Fourth Amendment, and "when government behavior is

governed by a specific constitutional amendment, due process analysis is inappropriate." (*See Hall I*, ECF No. 67-1 at 5 (quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000)).) "The constitutionality of the search and arrest would be 'governed by the Fourth Amendment rather than due process analysis.'" (*Id.* (citations omitted).) Accordingly, any Fourteenth Amendment due process claim will be dismissed as repetitive and as not plausible.

      **C.**      **Eighth Amendment Claim**

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Hall contends that his Eighth Amendment rights were violated by Defendant Nisbet because, due to false statements in "every Warrant Affidavit," bail was set at an excessive amount. (Compl. at 17.) Hall further contends that the judge who assigned bail relied upon the evidence presented by Defendant Nisbet. (*Id.*)[5]

To the extent that Hall seeks to present a constitutional claim based on the bail determination against Defendant Nesbit, such claim will be dismissed. It is not clear that any of the named Defendants, much less Defendant Nesbit, were involved in the bail determination based on the facts alleged here. *See James v. York Cty. Police Dep't*, 160 F. App'x 126, 133 (3d Cir. 2005) (*per curiam*) ("[I]n Pennsylvania, the district justice[s], not the police officers, set bail.") (citing Pa. R. Crim. P. 120); *see also Sheffer v. Centre Cnty.*, 2019 WL 2621836, at *8 (dismissing Eighth Amendment excessive bail claim because "at a minimum the plaintiff must allege that the defendant manipulated the bond decision"). Moreover, to the extent that Hall's

---

[5] In *Hall I*, summary judgment was granted on Hall's First, Sixth, Eighth, and Ninth Amendment claims. (*See Hall I*, ECF No. 58.) The Third Circuit affirmed the grant of summary judgment on the First, Sixth, Eighth, and Ninth Amendment claims "because Hall did not explain the relevance of those provisions or present evidence to support the claims." (*Hall I*, ECF No. 67-1 at 5.)

Eighth Amendment claim is based on alleged false statements in the warrants, his claim is barred by *Heck* because it impugns the validity of his conviction. *See, e.g., Rambert v. Krasner*, No. 19-5249, 2020 WL 868129, at *5 (E.D. Pa. Feb. 21, 2020) (to the extent plaintiff alleged that the failure to correct false convictions in his criminal record was responsible for unlawful conviction or imprisonment, his claims are barred by *Heck*), *aff'd sub nom. Rambert v. Dist. Att'y Philadelphia*, No. 20-1593, 2022 WL 205416 (3d Cir. Jan. 24, 2022); *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 427 (E.D. Pa. 2020) ("Yoast's claim is based on his assertion that O'Neill falsified the Affidavit of Probable Cause which caused the bail amount to be artificially increased. Success on this claim would imply that O'Neill lacked probable cause to arrest Yoast, which would imply that Yoast's conviction—which was based on the same alleged conduct—was invalid."), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023). Consequently, Hall's claims against Defendant Nesbit based on the bail determination will be dismissed for failure to state a claim.

### D.  Claim Against Chief Molley

Although Hall labels his claim against Chief Molley as a claim for municipal liability,[6] (*see* Compl. at 18), based on the allegations in the Complaint, the Court understands Hall to

---

[6] Chief Molley was not named as a defendant in *Hall I*. In that case, Hall raised a *Monell* claim, referencing the unnamed "police chief." (*See, e.g., Hall I*, ECF No. 1 at 22 (alleging that Hall's injuries were caused by "defendants police chief and higher office" by "failing to properly train, supervise and control the conduct of the above-defendant officers by failing to train members of the Abington Police Department to enforce the law").) During discovery in *Hall I*, the court directed the defendants to take Hall's deposition to clarify the claims set forth in the Complaint. (*See Hall I*, ECF No. 36 at 9.) Defendants reported to the court that Hall testified during his deposition that he sought to present Fourth Amendment claims based on an illegal search and arrest, claims based on violations of his Fifth, Sixth, and Eighth Amendment rights, as well as a *Monell* failure to train claim and pendent Pennsylvania tort claims. (*Hall I*, ECF No. 36. at 9, 17.) On appeal, the Third Circuit noted with respect to Hall's *Monell* claim that "he failed to present evidence that any of the defendants' conduct was based on a policy or custom" and

present a claim of supervisory liability.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).[7]  A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Barkes*, 766 F.3d at 316.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Rode*, 845 F.2d at 1207.

    Hall contends that Defendant Molley was aware that the affidavits contained false statements and turned a blind eye.  (Compl. at 18-19.)  In particular, he claims that Chief Molley knew that Johnson was not in the residence, and failed to discipline and to supervise his subordinates.  (*Id.*)

---

concluded that the defendants were entitled to summary judgment on that claim.  (*Hall I*, ECF No. 67-1 at 4-5 n.2.)

[7] This type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure."  *Barkes*, 766 F.3d at 317; *see also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

Like Hall's Fourth Amendment claims, the basis for Hall's claim against Chief Molley is the alleged invalidity of the warrants. (*See id.* at 18 ("The facts being the record, and video being direct evidence, specifically Erica Johnson's Affidavit. Video showing Erica Johnson, was not in the residence and the willfulness of the Defendants to falsify documents, and the supervisor Chief Molley, having the direct knowledge of such facts."); *id.* at 19 ("The video captures the events complained of in the complaint, and sets a contrast to the false statements added by the Defendants.").) Thus, Hall's supervisory liability claim also is barred by *Heck* because success on the claim would impugn the validity of his conviction, which has not been invalidated. *See, e.g., Allen v. Smith*, No. 19-3300, 2020 WL 2062322, at *6 (E.D. Pa. Apr. 29, 2020) (finding supervisory liability claim barred by *Heck*); *Yoast*, 437 F. Supp. 3d at 431 n.118 (finding supervisory liability claim barred by *Heck*), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023).

### E.     Other Claims

As noted above, a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable. *See Rode*, 845 F.2d at 1207; *see also Jutrowski*, 904 F.3d at 290. Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207)). Hall has named Robert Hill, Jr.; Ryan Duntzee; Shane Larosa; John Lands; Raymond Townsend; William Plymouth; Shawn Williams; Jeffrey Anderson; Richard Kondon; Ryan Brown; Thomas Nyman; Michael Farley; and Andrew Ammaturo in the caption of his Complaint and in the list of Defendants. (*See* Compl. at 1-7.) However, Hall includes no facts about how any of these individuals may be held liable for a constitutional claim. Accordingly, Hall has failed to allege a plausible claim against Robert Hill, Jr.; Ryan Duntzee;

Shane Larosa; John Lands; Raymond Townsend; William Plymouth; Shawn Williams; Jeffrey Anderson; Richard Kondon; Ryan Brown; Thomas Nyman; Michael Farley; and Andrew Ammaturo.

Additionally, Hall has named the Abington Township Police Department as a Defendant. Following *Monell*, courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See, e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.; Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability") (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir. 1988)); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). Therefore, the Abington Township Police Department is not a proper defendant in this case under § 1983, and Hall's claims against it are dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Hall leave to proceed *in forma pauperis* and dismiss his Complaint. Each of Hall's claims are rooted in his assertion that the search warrant and the arrest warrant contain falsified statements. Accordingly, Hall's Fourth Amendment claim remains *Heck*-barred and will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as malicious and pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure

to state a claim.  *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (*Heck*-barred claims must be dismissed without prejudice).  The Eighth Amendment claim, as well as the supervisory liability claim, also are *Heck*-barred and will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Hall's Fourteenth Amendment claims and claims against the Abington Police Department will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

      Leave to amend will not be given because amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  Hall may file a new case only in the event his conviction is reversed, vacated, or otherwise invalidated.

      An appropriate Order follows.

                          **BY THE COURT:**

                          /s/ John Milton Younge
                          **JOHN MILTON YOUNGE, J.**